NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

DELROY DENTON CARTER,  :
:
        Petitioner,  :
:   Civil Action No. 02-2016 (JAG)
v.  :
:   **O P I N I O N**
UNITED STATES OF AMERICA,  :
:
        Respondent.  :
:

**GREENAWAY, JR., U.S.D.J.**

      Petitioner Delroy Denton Carter ("Petitioner") has filed the instant pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255 ("§ 2255").[1] Petitioner contends that his sentence should be vacated or corrected for two reasons. First, Petitioner claims that this Court should reevaluate his sentence and retroactively apply Amendment 632 to Section 2L1.2 of the United States Sentencing Guidelines. Second, Petitioner claims that he was deprived of his sixth amendment right to effective assistance of counsel. For the reasons set forth below, the petition is denied.

---

[1] 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

## BACKGROUND

A.   **Procedural History**

On September 5, 2000, a federal grand jury in the District of New Jersey returned a one-count indictment charging Petitioner with illegally reentering the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  (Indictment [Cr. No. 00-580 (HAA)], at ¶ 4.)  On February 26, 2001, Petitioner entered a guilty plea to the one-count indictment.  (Pre-Sentence Report dated July 5, 2001 ("PSR"), at ¶ 1.)  On August 29, 2001, Petitioner was sentenced to 78 months in prison with three years of supervised release.  (Transcript of Sentence Proceedings ("Sent. Tr."), at 25.)

On May 2, 2002, Petitioner moved to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, and on April 5, 2005, the Government answered the instant petition.

B.   **Facts**

Petitioner was born in Jamaica in 1965 and immigrated to the United States on July 3, 1984, at the age of 19.  (PSR ¶¶ 6, 53.)  Some members of Petitioner's family, including siblings and most of Petitioner's children, continue to reside in the United States.  (PSR ¶¶ 55-58.)

On September 29, 1988, Petitioner was convicted of attempted possession of marijuana in the State of New York.  (PSR ¶ 29.)  Subsequent to this conviction, between November 1988 and August 1989, he was convicted on eight occasions of criminally possessing marijuana in the State of New York, and sentenced to financial penalties and probation with some time served in jail.[2]  (PSR ¶¶ 31-45.)  He was deported to Jamaica on July 31, 1992.  (PSR ¶¶ 31-45.)

---

[2] Petitioner was given one year of probation following his first conviction of criminal possession of marijuana.  (PSR ¶ 31.)  After Petitioner's fifth conviction of criminal possession of marijuana, Petitioner was given three years of probation.  (PSR ¶ 39.)  Petitioner violated

On November 11, 1996, Petitioner attempted to re-enter the United States through Miami, Florida. (PSR ¶ 8.) Petitioner was convicted of illegal re-entry and alien smuggling, which is an aggravated felony, in the United Stated District Court for the Southern District of Florida on February 21, 1997. (PSR ¶ 8.) Petitioner was deported to Jamaica on May 29, 1997. (PSR ¶ 8.)

On November 29, 1998, Petitioner attempted to re-enter the United States through Fort Lauderdale, Florida. (PSR ¶ 9.) Petitioner was convicted of illegal re-entry by an aggravated felon in the United States District Court for the Southern District of Florida.[3] (PSR ¶ 9.) Petitioner was again deported to Jamaica on October 4, 1999. (PSR ¶ 9.)

On July 16, 2000, Petitioner was arrested while attempting to re-enter the United States through Newark, New Jersey by presenting a fraudulent Jamaican passport in the name of "Desmond George Smith." (PSR ¶ 10.) On September 5, 2000, a federal grand jury returned a one-count indictment ("Indictment") charging Petitioner with illegally reentering the United States, in violation of 8 U.S.C. § 1326. On or about February 26, 2001, Petitioner pled guilty to the Indictment. (Transcript of Plea Proceedings ("Plea Tr."), at 7.) On August 29, 2001, Petitioner was sentenced to 78 months in prison, and a three year term of supervised release. (Sent. Tr. at 24.)

At the sentencing hearing, the government objected to a two-point downward departure for acceptance of responsibility and sought an upward departure based on the repetitive nature of

---

probation and was sentenced to time served, which was twenty-four (24) days. (PSR ¶ 40.) Petitioner also served fifteen (15) days at the New York City Department of Corrections following his eighth conviction of criminal possession of marijuana. (PSR ¶ 45.)

[3] The district court found that Petitioner was not an aggravated felon, but this determination was reversed by the United States Court of Appeals for the Eleventh Circuit, which concluded that Petitioner was an aggravated felon. (Note to PSR ¶ 50.)

Petitioner's criminal history. (Sent. Tr. at 4, 14.) Petitioner's counsel successfully opposed the government's requests. (Sent. Tr. at 11, 19.) The sentencing court granted Petitioner's motion for a downward departure and denied the government's request for an upward departure. (Sent. Tr. at 11, 19.)

Petitioner filed a timely notice of appeal on September 6, 2001. (Notice of Appeal Letter dated September 6, 2001.) On appeal, Petitioner challenged the determination that he was an aggravated felon and filed a brief to that effect on or about May 13, 2002. On or about May 6, 2002, Petitioner filed a pro se motion to dismiss his appeal.[4] The Court of Appeals for the Third Circuit granted Petitioner's motion to dismiss on May 21, 2002. Petitioner now brings this pro se petition seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2255.

## **LEGAL STANDARD**

According to Section 2255, a federal prisoner in custody may file a petition seeking a writ of habeas corpus with the sentencing court on the grounds that: (1) the imposed sentence violated the United States Constitution or laws; (2) the court did not have jurisdiction; (3) the sentence exceeded the maximum allowed by law; or (4) the sentence is subject to collateral attack on other grounds. See 28 U.S.C. § 2255. "[A] motion to vacate sentence under 28 U.S.C. § 2255 is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). Unless it appears conclusively from the motion, files, and records

---

[4] The record is unclear as to how Petitioner, moving pro se, could have withdrawn an appeal that had not yet been filed by counsel. Notwithstanding this chronology, neither party disputes that any appeal that may have been filed with the Court of Appeals was dismissed, pursuant to Petitioner's own request to withdraw the appeal.

that the petitioner is not entitled to relief, the district court must grant the petitioner an evidentiary hearing on the matter. See id.

Habeas corpus does not encompass all sentencing errors because it is not a substitute for direct appeal. See United States v. Addonizio, 442 U.S. 178, 184 (1979). Errors that justify reversal on direct appeal may not necessarily be sufficient to support collateral relief. See id. at 184. Where a prisoner fails "to raise his claim on direct review, the writ [of habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'" Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Wainwright v. Sykes, 433 U.S. 72, 84 (1977)). Alternatively, collateral relief is available under § 2255 when the alleged error of law constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Addonizio, 442 U.S. at 185. Thus, the error must be fundamental and present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Davis v. United States, 417 U.S. 333, 346 (1974).

## DISCUSSION

In his motion, Petitioner argues that his sentence of 78 months should be vacated or modified. (Petitioner's Brief dated April 2002 ("Pet. Br."), at 2.) In support of his motion, Petitioner argues that this Court should apply Amendment 632 retroactively, which would reduce his total offense level from 22 to 18.[5] (Pet. Br. at 5.) Petitioner further argues that he

---

[5] Section 2L1.2 of the Sentencing Guidelines, as amended by Amendment 632, provided in pertinent part:

> (a) Base Offense Level: 8
> (b) Specific Offense Characteristic
> (1) Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after--

was deprived of his sixth amendment right to effective assistance of counsel.[6]  (Pet. Br. at 2.)

Specifically, Petitioner claims that his attorney should have, but failed to, move for a downward

departure based on "cultural assimilation."[7]  (Pet. Br. at 3-4.)  For the following reasons, the

motion is denied.

A. **Failure to Establish Cause and Actual Prejudice or a Fundamental Defect Resulting in a Miscarriage of Justice**

As stated above, where a prisoner fails "to raise his claim on direct review, the writ [of

habeas corpus] is available only if the [prisoner] establishes 'cause' for the waiver and shows

'actual prejudice resulting from the alleged violation.'"  Reed, 512 U.S. at 354.  Alternatively,

collateral relief is available under § 2255 when the claimed error of law constitutes "a

---

> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense committed for profit, increase by 16 levels;
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels;
> (C) a conviction for an aggravated felony, increase by 8 levels;
> (D) a conviction for any other felony, increase by 4 levels; or
> (E) three or more convictions for misdemeanors that are crimes of violence or drug trafficking offenses, increase by 4 levels.

[6] The sixth amendment of the Constitution protects the "right [of the accused] to . . . have the Assistance of Counsel for his defense."  U.S. CONST. amend. VI.  The Supreme Court of the United States has held that "the right to counsel is the right to the effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970).

[7] "Cultural assimilation" is the argument that Petitioner "has so assimilated into American culture, that the Court should disregard the applicable punishments" and grant a downward departure.  See United States v. Vilcapoma, 46 Fed. Appx. 98, 99 (3d Cir. 2002).  Petitioner argues that "his cultural assimilation mitigates his culpability for the crime of illegal reentry because his reentry was motivated by his cultural, emotional, psychological, and family ties to this country." (Pet. Br. at 4.)

fundamental defect which inherently results in a complete miscarriage of justice." <u>Addonizio</u>, 442 U.S. at 185. In light of Petitioner's failure to raise his claims on direct review, this Court initially will address whether Petitioner has made the requisite showing of cause and prejudice to merit review of his sentence, pursuant to § 2255.

Petitioner's first claim, that this Court should apply Amendment 632 of the sentencing guidelines retroactively, does not merit collateral review. Petitioner argues that, because U.S.S.G. § 2L1.2, as amended by Amendment 632, would change his offense level from 22 to 18, this Court should retroactively apply the amendment. (Pet. Br. at 5.)

Notwithstanding this Court's liberal reading of the petition, this Court cannot discern the requisite cause or explanation for why Petitioner failed to seek direct review of his sentence on this ground.[8] Petitioner states that, when he initially appealed his sentence to the Court of Appeals for the Third Circuit, the court informed Petitioner "that if he wishes to bring forth claims of ineffective assistance of counsel, he has to bring them in a motion to vacate pursuant to § 2255." (Pet. Br. at 2.) While this might help to explain why Petitioner did not raise his ineffective assistance of counsel claim on direct review, this statement does not establish "cause" for failing to seek relief on direct review on the retroactivity of Amendment 632.

In the absence of cause for failing to raise these issues on direct review, this Court need not discuss whether Petitioner was prejudiced by the harm alleged. Further, as Petitioner does not provide a basis upon which this Court could conclude that an error resulting in a complete miscarriage of justice has occurred, such that collateral review is warranted, this Court must

---

[8]Petitioner appears to state only the prejudice he may suffer if his request for relief is denied, not the cause or basis for failing to seek direct review.

reject Amendment 632 as a basis for granting collateral relief under § 2255.

Petitioner's second claim, seeking relief for ineffective assistance of counsel, however, is properly raised on a collateral attack of the sentence and is not subject to the same cause and prejudice standard that is ordinarily applied to other claims for relief in a habeas petition. See United States v. Haywood, 155 F.3d 674, 678 (3d Cir. 1998) ("We have repeatedly held that 'the proper avenue for pursuing [ineffective assistance of counsel claims] is through a collateral proceeding . . . ."). Therefore, the claim that counsel was ineffective is properly before this Court.

**B.     Ineffective Assistance of Counsel**

This Court must address the only claim that Petitioner has raised properly under § 2255 – that he was deprived of his sixth amendment right to "'reasonably effective assistance' of counsel." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner making such a claim must satisfy a two-prong test. First, the prisoner must establish that "counsel's performance was deficient," i.e., that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88.

The second prong in Strickland requires a prisoner to show that counsel's "deficient performance prejudiced the defense." Id. at 687. In order to meet the second prong, the prisoner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability exists when the probability is "sufficient to undermine confidence in the outcome." Id. The prisoner has the burden of proof to demonstrate both parts of the test. See

id. at 697.  Failure to prove either part of the test is fatal to the claim.  Id.  It is proper for courts to decide first "whether the assumed deficient conduct of counsel prejudiced the defendant." McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993) (quoting United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987)).[9]

     Petitioner claims that, at sentencing, his attorney should have moved, but did not, for a downward departure based on "cultural assimilation."  (Pet. Br. at 2-3.)  Petitioner claims that he returned to the United States to see his children because he was worried about their well-being.  (PSR ¶ 13.)  Petitioner contends that "his reentry was motivated by his cultural, emotional, psychological, and family ties to this country [that were] developed because of his children who are [sic] born in this country and continue[] to reside in this country after his deportation."  (Pet. Br. at 4.)

Cultural assimilation can be a factor that warrants a downward departure in an illegal reentry case.  See, e.g., Vilcapoma, 46 Fed. Appx. at 100 n.4 (acknowledging that cultural assimilation can be a factor justifying a downward departure in an illegal reentry case); United States v. Rodriquez-Montelongo, 262 F.3d 429, 434 (5th Cir. 2001) (same); United States v. Lipman, 133 F.3d 726, 731 (9th Cir. 1998) (same).  Cultural assimilation is "akin to the factor

---

[9] "Strickland itself recognized that:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  The object of an ineffectiveness claim is not to grade counsel's performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

McAleese, 1 F.3d at 171 (quoting Strickland, 466 U.S. at 697).

9

of 'family and community ties,'" which is generally a discouraged factor, so while "the district court has the authority" to depart on this basis, it should do so only in "extraordinary circumstances."  See, e.g., Lipman, 133 F.3d at 730.

In the present case, Petitioner has shown no "extraordinary circumstances" that would have warranted this Court to apply a downward departure based on cultural assimilation.  As a general matter, since "[e]very deported alien may leave family behind[, t]his factor alone . . . may not justify a downward departure from the guidelines."  United States v. Abreu-Cabrera, 64 F.3d 67, 76 (2d Cir. 1995).

Here, Petitioner's "cultural assimilation" claim is exactly, and solely, that – he asserts that he should have been granted a downward departure based on his family ties in the United States. While most of his family lives in the United States, he actually has family, including a child, who do not live in this country.[10]  In addition, the record does not reflect close contact between Petitioner and his children in the United States.  Furthermore, Petitioner also has spent the greater part of his life outside the United States.  Petitioner was born in Jamaica and immigrated to the United States at the age of 19 in 1984.  (PSR ¶ 6.)  These facts, considered along with the fact that Petitioner was convicted of nine drug related crimes in the State of New York and deported three times in the 1990s, falls short of establishing the sort of "extraordinary circumstances" that would have merited a downward departure based on cultural assimilation.

Indeed, courts have not found "extraordinary circumstances" in cases involving far more compelling facts than the instant case.  See, e.g., Lipman, 133 F.3d at 729.  The defendant in Lipman immigrated to the United States at the age of twelve, lived here continuously for 23

---

[10] For example, Petitioner's brother lives in England and one of his children lives in Jamaica.  (PSR ¶¶ 55, 58.)

years, married a United States citizen, raised five children from that marriage, and also fathered two other children. Id. All of his children were United States citizens. Id. The defendant's entire family, including his mother, siblings, wife and five children, resided in the United States as citizens. Id. The defendant claimed that he illegally reentered the United States through California to visit his disabled daughter who resided in New York and who had been sexually assaulted. See id. Even though the district court found that the defendant's case was "'unusual' and somewhat 'atypical' . . . with respect to 'the number of family members who live here in the United States,'" the court still found that it was not "so unusual as to justify a downward departure in light of the nature and number of offenses that caused [defendant] to lose his residency status in the first place."[11] Id. at 732.

Pursuant to Strickland, 466 U.S. at 687-88, this Court must consider whether, in the first instance, there is a reasonable likelihood that raising this particular claim would have resulted in a different outcome, i.e., whether counsel's failure to do so prejudiced Petitioner. Based on the record before this Court, this Court cannot conclude that Petitioner could have demonstrated "extraordinary circumstances" so as to warrant consideration of "cultural assimilation" at sentencing. In light of the absence of "extraordinary circumstances," Petitioner has not established that there was a reasonable probability that, had counsel raised these facts during Petitioner's sentencing proceeding, that the result of the proceeding would have been different. Accordingly, this Court cannot conclude that Petitioner has demonstrated prejudice, as required by the second prong of the Strickland test. Since a party seeking relief for ineffective assistance

---

[11] While the defendant in Lipman was convicted of more serious offenses than Petitioner, id. at 728, it also is evident that the defendant in Lipman had more significant ties to the United States than Petitioner.

11

of counsel must satisfy each prong of the Strickland test, and Petitioner cannot, his ineffective assistance of counsel claim necessarily fails.

## CONCLUSION

For the reasons set forth in this Opinion, this petition is denied. It is further decided, pursuant to 28 U.S.C. § 2253(c)(2), that because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

DATED: May 16, 2005

    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.